```
                      UNITED STATES DISTRICT COURT
                        DISTRICT OF CONNECTICUT

-------------------------------- x
ELAINE JOHNSEN,                  :
                                 :
          Plaintiff,             :
                                 :
                                 :
v.                               :
                                 :  Civil No. 3:22-cv-514(AWT)
                                 :
WELLS FARGO BANK, N.A.           :
                                 :
          Defendant.             :
                                 :
                                 :
-------------------------------- x
```

## RULING ON MOTION TO DISMISS

Plaintiff Elaine Johnsen brings a five-count Complaint against defendant Wells Fargo Bank, N. A. ("Wells Fargo"), asserting the following claims: Count One, a claim for breach of contract; Count Two, a claim for breach of the implied covenant of good faith and fair dealing; Count Three, a claim for violation of Conn. Gen. Stat. § 31-72 by failing to pay wages; Count Four, a claim for promissory estoppel; and Count Five, a claim for negligent misrepresentation. Wells Fargo has filed a partial motion to dismiss, seeking to dismiss Count Three, Count Five, Count One in part, and Count Two in part.

For the reasons set forth below, Wells Fargo's partial motion to dismiss is being denied.

## I.     RELEVANT FACTUAL ALLEGATIONS

The plaintiff "was employed by Wells Fargo in various capacities in its branch locations located in Bethel, Woodbury, and Watertown, Connecticut" commencing April 13, 2010. Compl. (ECF No. 1) at ¶ 5. "In the spring of 2021, Plaintiff and her husband decided to relocate their primary residence from Woodbury, Connecticut to Thorn Hill, Tennessee." Id. at ¶ 6. "On August 5, 2021, Plaintiff advised her Wells Fargo manager (Nesiha Klenja) and her Wells Fargo District Manager (Lucy Harriman) of her intent to relocate to Tennessee and to cease working for Wells Fargo." Id. at ¶ 7. "Plaintiff informed them that she planned to continue working at the Wells Fargo Woodbury branch through September 17, 2021, giving approximately six weeks' advance notice." Id.

Plaintiff ceased actively working for Defendant on September 17, 2021" and the plaintiff and her husband "were on track to leave for Tennessee on October 4, 2021, their planned departure date." Id. at ¶ 8.

"On September 30, 2021, Ms. Harriman and Ms. Klenja contacted Plaintiff. They asked Plaintiff if she would agree to assist in the closure of Wells Fargo's Woodbury branch, which Wells Fargo planned to close in approximately four months." Id. at ¶ 9. "Ms. Harriman stated that Plaintiff would be asked to work in the Woodbury branch through the date its doors closed

for good (January 26, 2022), following which she would work as a Roving Banker in Wells Fargo's Greater Danbury District until February 24, 2022." Id. "Ms. Harriman, with both actual and apparent authority, further stated that this offer had been approved by Wells Fargo's Human Resources representatives." Id.

"Ms. Harriman informed Plaintiff of the approved offer: that in exchange for her commitment to remain at Wells Fargo and thereby work in Connecticut from mid-October 2021 through February 24, 2022 assisting in the closure of the Woodbury branch, Plaintiff (a) would be fully reinstated with no official break in her employment, and (b) would receive not only her normal wages and benefits, but a bonus payment for postponing her termination date (approximately $27,000) ("Stay Bonus") and a displacement payment (approximately $11,000) ("Displacement Payment")." Id. at ¶ 10.

The plaintiff accepted Wells Fargo's offer, but told Klenja "that she would need time to move her possessions to Tennessee and get settled in there." Id. at ¶ 12. "Plaintiff suggested an October 18, 2021 return date to the Woodbury branch, and Ms. Klenja agreed." Id. On October 17th, the plaintiff returned to Connecticut. Because the plaintiff "already had sold her Connecticut home, Plaintiff made arrangements with her in-laws to stay at their residence in an age-restricted retirement community in Oxford, Connecticut." Id. at ¶ 13. "In accordance

-3-

with her agreement with Wells Fargo, Plaintiff reported to work at the Woodbury branch on October 18, 2021." Id. at ¶ 14.

On November 18, 2021, Harriman "informed [the plaintiff] that Wells Fargo's Human Resources Department had decided not to provide the previously-promised Stay Bonus and Displacement Payment." Id. at ¶ 15

## II. LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint

are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citations and quotations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 547. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). "[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless

'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

### III. DISCUSSION

#### A. Count Three – Conn. Gen. Stat. § 31-72

Wells Fargo argues that Count Three fails as a matter of law because "the severance and displacement payments to which [the plaintiff] claims entitlement [do not] constitute 'wages' under section 31-71a(3) of the Connecticut General Statutes." Def.'s Mem. Support Mot. Dismiss (ECF No. 12) at 5.

"Wages" is defined as follows: "Wages means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Conn. Gen. Stat. § 31-71a(3) (internal quotation marks omitted).

Wells Fargo contends that the payment in the amount of approximately $27,000 would have been severance pay. "Neither severance pay nor unpaid leave is 'wages' for purposes of § 31-72." LaChance v. Hartford Healthcare Corp., 2020 WL 3404151 at *2 (D. Conn. 2020); see also McGowan v. Adm'r, Unemployment Comp. Act, 153 Conn. 691, 693 (1966) ("Since, . . . wages cease

-6-

when employment does, severance pay cannot be considered wages. . . . Severance pay is 'a form of compensation for the termination of the employment relation[ship], for reasons other than the displaced employees' misconduct, primarily to alleviate the consequent need for economic readjustment but also recompense him for certain losses attributable to the dismissal.'" (internal citations omitted)). With respect to the payment in the amount of $11,000, Wells Fargo maintains that "the alleged displacements, which . . . presumably relate to Plaintiff's having been 'displaced' from her new home in Tennessee to continue working in Connecticut for a few months," do not constitute "compensation for labor or services rendered." Def.'s Mem. Support Mot. Dismiss at 5.

   The court concludes that the plaintiff has alleged facts showing that each payment falls within the definition of "wages." To induce the plaintiff to work in Connecticut during the period commencing in mid-October 2021, Wells Fargo agreed to pay her not only her normal wages and benefits, but two additional amounts: the approximate sum of $27,000 and the approximate sum of $11,000. Drawing all reasonable inferences in favor of the plaintiff, although those amounts are labeled as the "Stay Bonus" and the "Displacement Payment," respectively, each can fairly be characterized as a bonus. At the time Wells Fargo agreed to make these payments on September 30, 2021, the

plaintiff herself had already ended her employment with Wells Fargo; she alleges that she had informed Wells Fargo her last day at work would be September 17, 2021. The plaintiff was being induced to work for Wells Fargo going forward, not being discharged by Wells Fargo. The plaintiff alleges that the additional payments and other compensation were offered in exchange for her commitment to work through February 4, 2022. Moreover, the amount of each bonus was not discretionary, nor was that bonus being awarded by Wells Fargo solely on a discretionary basis. Wells Fargo made a firm commitment to pay each bonus. The first amount it attributed to the plaintiff working past what would have been her last day; the second amount it attributed to her being willing to work in Connecticut even though she had moved her possessions to Tennessee. Bonuses are "wages as defined by § 31-71[a](3)" where they are "entirely nondiscretionary, both as to whether they would be awarded, and the amount thereof." Association Resources, Inc. v. Wall, 298 Conn. 145, 176 (2010).

In support of its position that the "Stay Bonus" would have been severance pay, the defendant relies on a letter the plaintiff's attorney sent to Wells Fargo on December 27, 2021, which made reference to "severance and displacement payments." Exh. 1, Def.'s Mem. Support Mot. Dismiss (ECF No. 12-1) at 2. Wells Fargo contends that the court should consider that letter

because it is referred to in the Complaint. See Compl. at ¶ 16. ("By correspondence from her counsel dated December 27, 2021, Plaintiff requested confirmation that Wells Fargo would honor the representations upon which Plaintiff relied in moving back to Connecticut.") However, the requirements for considering that letter in connection with a motion to dismiss are not satisfied here. In Goel v. Bunge, Ltd., the court explained:

> Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken."

820 F.3d at 559 (quoting Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016)(internal quotation marks omitted)).

> We have recognized, however, that in some cases a document not expressly incorporated by reference in the complaint is nevertheless "integral" to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint "where the complaint relies heavily upon its terms and effect."

Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted)).

> Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering "limited quotation[s]" from the document is not enough. "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the

-9-

plaintiff's complaint stands or falls, but which for some reason – usually because the document read in its entirety, would undermine the legitimacy of the plaintiff's claim – was not attached to the complaint."

Id. (quoting Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006)).

Here, the December 27, 2021 letter is merely mentioned in the Complaint. The Complaint does not rely heavily on the terms and effect of that letter. Thus, the letter is not integral to the Complaint.

**B. Count Five – Negligent Misrepresentation**

Wells Fargo argues that the plaintiff's claim for misrepresentation fails "because Plaintiff has not plausibly alleged Ms. Harriman (or anyone else at Wells Fargo) had no intent to follow through on such alleged representations." Def.'s Mem. Support Mot. Dismiss at 6.

"Traditionally, an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." Coppola Const. Co., Inc. v. Hoffman Enterprises Ltd. Partnership, 309 Conn. 342, 351-52 (2013) (quoting Nazami v. Patrons Mutual Ins. Co., 280 Conn. 619, 626 (2006)) (internal citations and quotation marks omitted). Thus,

the plaintiff is not required to allege facts showing that Wells Fargo had no intent to follow through on its representation. Rather, she is required to allege facts showing that Wells Fargo knew or should have known that its representation was false. The plaintiff has done so.

> This court has long recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. . . . The governing principles [of negligent misrepresentation] are set forth in similar terms in § 552 of the Restatement (Second) of Torts (1977): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Kramer v. Petisi, 285 Conn. 674 (2008) (alteration in original)(internal quotation marks omitted)(quoting Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 575 (1995) (internal citations omitted)). "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known." Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 111 (1982) (internal citations omitted). The court agrees with the plaintiff that

> [a] fact "capable of being known" was whether Wells Fargo committed to make the payments offered to induce Plaintiff to provide services for a certain time period.

> On September 30, 2021, Plaintiff's District Manager (Ms. Harriman) made representations of fact: if Plaintiff assisted in the closure of Wells Fargo's Woodbury office for a defined period of time, Wells Fargo would pay her money in excess of her normal wages.

Pl's Mem. Opp. Mot. Dismiss (ECF No. 15) at 14 (internal citations omitted).

If the plaintiff had claimed that Wells Fargo had no intent to follow through on its representation, she would be bringing a claim for intentional misrepresentation or fraud. See Jarozewski v. Gamble, 2013 WL 3802420 at *6 (Conn. Super. Ct. 2013).

**C. Counts One and Two – ERISA Preemption re: Stay Bonus**

Wells Fargo argues that, to the extent the plaintiff claims she is entitled to a severance payment, the claim in Count One for breach of contract and the claim in Count Two for breach of the implied covenant of good faith and fair dealing are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"). The defendant maintains that because "[t]he Wells Fargo Severance Plan, as the Plan itself states, is an ERISA plan. . . . ERISA governs any claims arising out of Plaintiff's non-receipt of severance pay." Def.'s Mem. Support Mot. Dismiss at 7-8 (internal citations omitted).

However, here the plaintiff does not claim that she is entitled to severance pay.

-12-

**IV.  CONCLUSION**

For the reasons set forth above, the Defendant's Partial Motion to Dismiss (ECF No. 11) is hereby DENIED.

It is so ordered.

Dated this 23rd day of February 2023, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
